

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1025 | **DATE** | 5/30/2002 |
| **CASE TITLE** | UNITED STATES OF AMERICA ex rel. HARRY ALEMAN vs. JERRY STERNES | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

- (1) ☐ Filed motion of [ use listing in "Motion" box above.]
- (2) ☐ Brief in support of motion due _____.
- (3) ☐ Answer brief to motion due _____. Reply to answer brief due_____.
- (4) ☐ Ruling/Hearing on _____ set for _____ at _____.
- (5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
- (6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
- (7) ☐ Trial[set for/re-set for] on _____ at _____.
- (8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
- (9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
- (10) ■ [Other docket entry] The petition for a writ of *habeas corpus* under 28 U.S.C. § 2254 [1-1] is denied. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

- (11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | MAY 3 1 2002 | | |
| | Notified counsel by telephone. | | date docketed | | 18 |
| | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | 5/30/2002 | | |
| | | | date mailed notice | | |
| CB | courtroom deputy's initials | U.S. DISTRICT COURT | | | |
| | | Date/time received in central Clerk's Office | CB | | |
| | | | mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>ex rel. HARRY ALEMAN | ) <br> ) <br> ) | |
| Petitioner, | ) <br> ) | No. 02 C 1025 |
| v. | ) <br> ) <br> ) | Suzanne B. Conlon, Judge |
| JERRY STERNES | ) <br> ) | |
| Respondent. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Petitioner Harry Aleman seeks a writ of *habeas corpus* to vacate his murder conviction

pursuant to 28 U.S.C. § 2254.

DOCKETED

MAY 31 2002

### PROCEDURAL HISTORY

On September 27, 1972, Billy Logan was murdered on West Walton Street in Chicago,

Illinois. In December 1976, Aleman was charged with Logan's murder in the Circuit Court of Cook

County. Following a bench trial before Judge Frank Wilson in May 1977, Aleman was acquitted.

Several years later, federal investigators uncovered evidence that Judge Wilson accepted a $10,000

bribe to acquit Aleman. In February 1990, Judge Wilson was informed of an FBI investigation into

the bribery. Shortly thereafter, he committed suicide. In December 1993, Aleman was charged again

with Logan's murder. Logan moved to dismiss the murder charge on double jeopardy grounds. The

Circuit Court of Cook County held double jeopardy did not bar Aleman's prosecution. The ruling

was affirmed, *People v. Aleman*, 281 Ill. App. 3d 991, 667 N.E. 2d 615 (1996), and the Illinois

Supreme Court denied Aleman's petition for leave to appeal. *People v. Aleman*, 168 Ill.2d 600, 671

1

N.E.2d 734 (1996). The United States Supreme Court denied Aleman's petition for writ of *certiorari. Aleman v. Illinois*, 519 U.S. 1128 (1997). Aleman then filed a petition for a writ of *habeas corpus.* This court denied Aleman's § 2255 petition. *United States v. Circuit Court of Cook County*, 967 F. Supp. 1022 (N.D. Ill. 1997). Addressing an issue of first impression, this court held the bribery of Judge Wilson reduced Aleman's trial to a sham; the trial did not implicate the risk of conviction necessary to raise double jeopardy concerns. *Id.* at 1027-29. The Seventh Circuit affirmed, *Aleman v. The Honorable Judges of the Circuit Court of Cook County*, 138 F.3d 302 (7th Cir. 1998), and the Supreme Court denied Aleman's writ of *certiorari. Aleman v. Circuit Court of Cook County*, 525 U.S. 868 (1998). Meanwhile, Aleman was found guilty of Logan's murder in a second jury trial on September 30, 1997. Aleman appealed; his conviction and sentence were affirmed. *People v. Aleman*, 313 Ill. App. 3d 51, 729 N.E.2d 20 (1st Dist. 2000). The Illinois Supreme Court denied leave to appeal. Aleman filed a writ of *certiorari* in the United States Supreme Court. The petition was denied. *Aleman v. Illinois*, 531 U.S. 1152 (2001).

## BACKGROUND

The factual findings of a state trial or appellate court are presumed correct in a federal *habeas* proceeding unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). There is no evidence before the court to rebut this presumption. Accordingly, the court adopts the Illinois appellate court's statement of facts.[1] *See Aleman*, 313 Ill. App. 3d at 54, 729 N.E.2d at 25.

Logan lived with his two sisters, one named Betty Romo. On September 27, 1972, Logan

---

[1] The Illinois appellate court issued two opinions on Aleman's direct appeal – a published opinion at 313 Ill. App. 3d 51, 729 N.E.2d 20 (1st Dist. 2000), and a 19-page unpublished order included in the *habeas* petition record at Volume I, Ex. E.

left his home for work at 11:00 p.m. Romo heard three loud noises or shots. Running outside, she discovered Logan bleeding from two shotgun wounds. Logan had been divorced from Phyllis Napoles, Aleman's cousin. Logan and Napoles were engaged in a custody battle. Logan had been arrested for her assault and battery.

At trial, Bobby Lowe, Logan's neighbor, testified that on September 27th, he observed a vehicle parked across the street with its engine running; he saw Logan walking to his parked automobile. As Lowe approached Logan, Lowe observed the other vehicle moving towards Logan. Lowe heard two loud noises and saw Logan "fly backwards." Tr., Vol. VIII, p. A-160. Lowe witnessed Aleman leaving from the passenger side of the vehicle. Aleman approached Logan with a gun-like object in his hand, and pointed it at Logan. Lowe stared at Aleman for four or five seconds, standing three or four feet away, then turned and ran. While running, Lowe heard another loud noise; he also heard the vehicle drive away. In 1972, Lowe identified Aleman in a photospread; in 1976, he identified Aleman as Logan's shooter.

In March 1975, Louis Almeida was arrested for possession of weapons and a silencer. Almeida provided police with information about his criminal activities, including armed robberies, vehicle thefts, and bombings. Almeida reported details of Logan's murder – identifying himself as the driver and Aleman as the shooter. In exchange, Almeida was given immunity from prosecution for Logan's murder. According to Almeida, in August 1972, Aleman discussed his plan to murder Logan and offered Almeida two license plate numbers and Logan's home and work addresses, writing "Death to Billy" on the same piece of paper. *Id.* at B-43. Almeida stalked Logan to learn his habits and schedule.

Almeida further testified to the following facts. On September 27, 1972, Aleman, armed

with a shotgun and a .45 caliber handgun, was driven by Almeida to Logan's home. At 11:15 p.m., Aleman saw Logan. Almeida drove the vehicle near Logan. Almeida called to Logan. Logan walked towards him. Aleman shot Logan twice with a 12-gauge shotgun. Logan "flew back" and began crawling and yelling for a doctor. *Id.* at B-51. Aleman stepped half-way out of the car, but "shut the door on the car and [said], let's go, he's gone." *Id.* at B-52.

Aleman presented several witnesses, including William Dietrich, Logan's nephew, and Stanley Ryba, Logan's neighbor. Dietrich, who lived with Logan on September 27, 1972, was asleep on the front porch at 11:00 p.m. Dietrich awoke to hear someone say, "hey, Bill, come here." Tr., Vol. XI, at p. F-85. Immediately hearing two gunshots, he looked outside and saw Logan on his knees, falling backwards. Dietrich did not see anyone on the street at that time. Ryba testified that at 11:00 p.m., he heard a gunshot, looked out his window, and observed a car double-parked on the street and a man lying on the ground. Ryba stated he did not see anyone else in the area. Guido Calcagno, Almeida's friend, testified Almeida was "not very truthful" and had a "tendency to lie about everything." Tr., Vol. XII, at p. G-144. Police officers who investigated Logan's murder testified Lowe was initially reticent and fearful, and merely identified the occupants of the automobile as two white males.

William Jr., Logan's son, and Napoles suggested that Petrocelli, not Aleman, murdered Logan. Napoles described Logan as an abusive drunk. After her divorce from Logan in 1967, Napoles had a relationship with Petrocelli, who was violent and had a dark side. In March 1972, Logan kicked down the door of her home and threatened her while he was drunk. Petrocelli argued with Logan and a violent physical confrontation ensued. Petrocelli threatened to kill Logan.

The jury found Aleman guilty. He was sentenced to a prison term of not less than 100 years

nor more than 300 years.

## DISCUSSION

### I. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Aleman cannot obtain *habeas* relief unless he establishes the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). This court analyzes whether the Illinois appellate court's decision reasonably applied Supreme Court precedent to the facts of Aleman's case. A state court reasonably applies Supreme Court precedent if its application is "at least minimally consistent with the facts and circumstances of the case." *Spreitzer v. Peters*, 114 F.3d 1435, 1442 (7th Cir. 1997). For *habeas* relief, the state court's decision must be both incorrect and unreasonable. *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000).

Aleman must satisfy two procedural requirements before the court may reach the merits of his *habeas* petition: (1) exhaustion of state remedies and (2) fair presentment of any federal claims to avoid procedural default. *Spreitzer v. Schomig*, 219 F.3d 639, 644 (7th Cir. 2000). A *habeas* petitioner exhausts state remedies when he presents his claims to the highest state court for a ruling on the merits. *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991). It is undisputed Aleman exhausted his state court remedies. Procedural default occurs when the petitioner fails to raise fairly and properly an issue on direct appeal or post-conviction review. *Moleterno v. Nelson*, 114 F.3d 629, 633-634 (7th Cir. 1997). The state concedes Aleman's claims were properly raised and presented to the Illinois courts on direct appeal. Finally, Aleman's § 2254 petition is timely because it was

filed within § 2244(d)(2)'s one-year statute of limitations. *See Anderson v. Litscher*, 281 F.3d 672, 675 (7th Cir. 2002).

## II.    Second or Successive *Habeas* Petition

At the outset, the state asserts this court lacks jurisdiction because Aleman's second *habeas* petition is barred under 28 U.S.C. § 2444. The AEDPA bars an individual from filing a second or successive *habeas* petition without obtaining leave from the appropriate court of appeals. 28 U.S.C. § 2244(b)(3). A pre-trial *habeas* petition brought to challenge an indictment on double jeopardy grounds must be treated as a § 2241 petition. *Jacobs v. McCaughtry*, 251 F.3d 596 (7th Cir. 2001). A § 2254 petition must be brought by petitioners in custody pursuant to a judgment of a state court. *Id.* at 597 (citing *Walker v. O'Brien*, 216 F.3d 626, 633 (7th Cir. 2000)). Section 2244's requirement that a second or successive *habeas* petition requires leave from the court of appeals applies to § 2254 petitions, not § 2241. *Id.* at 598; 28 U.S.C. § 2244.

The state acknowledges *Jacobs* is controlling precedent; the state argues this court and the Seventh Circuit previously identified Aleman's first *habeas* petition as a § 2254 petition. The decisions on Aleman's first *habeas* petition were issued before *Jacobs*. Subsequently, the Seventh Circuit determined a pre-trial *habeas* petition by a prisoner in pre-conviction custody does not fall within § 2254's requirement for second or successive petitions. *Jacobs*, 251 F.3d at 598. Accordingly, Aleman is not required to seek leave from the federal court of appeals. The court addresses Aleman's claims on the merits.

## III.    Jury Communications (Claim I)

On the second day of trial, the trial judge was informed Brenda Smith, a juror, had communicated with an assistant state's attorney who was not involved in the case. Outside the

presence of the jury, the trial judge questioned Smith. She explained she telephoned the assistant state's attorney because she "was just worried about this case and where it's going and what could happen to [her] as well as . . . family members [and] just wanted to know if there was anything [she] could do to take [herself] out of it." Tr., Vol IX, at p. D-4. The assistant state's attorney refused to speak with Smith.

The trial judge inquired further whether Smith discussed her concerns with anyone else. Smith initially answered "no," but when asked whether she discussed her concerns with other jurors, she answered, "Yeah. I mean, I guess--yeah. There have been times when we have said things or whatever when we walk in and we look at each other and kind of, you know, wow, that was, you know . . ." *Id.* at D-8. The court interrupted Smith, stating, "That's not a discussion." *Id.* Smith responded: "No I guess not then." *Id.* The court specifically questioned Smith whether she expressed her fears and concerns to other jurors. Smith claimed she and other jurors lightheartedly spoke about being around after the trial to exchange Christmas cards. *Id.* at D-9. Smith acknowledged she did not actually have conversations about her fears, she only discussed her insomnia. *Id.* at D-10. The court asked Smith if her fears would prevent her from deciding the case based upon the evidence and the law; her response was equivocal. Aleman asked the court to remove Smith from the jury. The trial judge agreed, and discharged Smith. Aleman requested the court to *voir dire* other jurors about their conversations with Smith. The court denied the request because Smith had not expressed or verbalized her concerns to other jurors. The court determined Smith could not "pinpoint any discussion she had where she expressed her fear or apprehensions about Mr. Aleman or anybody else in the case." *Id.* at D-17. The Illinois appellate court recognized the trial judge "was in the best position to judge Juror Smith's responses." *Aleman*, 313 Ill. App. 3d at 64, 729 N.E.2d at 32. The

trial court determined Smith did not discuss the facts of the case or her fears with other jurors. Consequently, the appellate court held it was not reversible error for the trial court to decline questioning other jurors about communications with Smith.

Aleman contends he was denied a fair trial before an impartial jury in violation of the Fifth and Fourteenth Amendments. "The constitutional standard of fairness requires that a defendant have a panel of impartial, indifferent jurors." *Murphy v. Florida*, 421 U.S. 794, 799 (1975) (internal quotations omitted). Aleman asserts the trial judge's ruling constitutes an unreasonable application of clearly established federal law, and resulted in an unreasonable determination of the facts based on the evidence presented in the state court proceeding. 28 U.S.C. § 2554(d)(1)-(2).

The determination of whether the jury was prejudiced is a question of fact. *Rushen v. Spain*, 464 U.S. 114, 120 (1983). Under § 2254(d)'s presumption of correctness, the court will reverse a state trial court determination only if the petitioner rebuts the presumption with clear and convincing evidence. After repeated questioning by the trial judge, Smith did not indicate she discussed her fears with the jury. *See Patton v. Yount*, 467 U.S. 1025, 1036 (1984) (trial judge is in the best position to assess a juror's answer). Indeed, Smith felt the jury knew her fears because she stated she had not been sleeping at night. Aleman cannot establish the jury was tainted based on Smith's vague comment about sleeplessness. Aleman fails to rebut the presumption of correctness accorded to the state court's finding by clear and convincing evidence.

In addition, Aleman asserts the trial judge's refusal to question other jurors is an unreasonable application of federal law. Aleman argues any communication between jurors during trial about the trial's subject matter is presumptively prejudicial. A § 2254 petitioner must show the Supreme Court has clearly established the propositions essential to his position. *Mueller v. Sullivan*,

141 F.3d 1232, 1234 (7th Cir. 1998). Indeed, a petitioner "must have a Supreme Court case to support his claim, and that Supreme Court decision must have clearly established the relevant principle [at] the time of his direct appeal." *Yancey v. Gilmore*, 113 F.3d 104, 106-107 (7th Cir. 1997). Aleman advances *Williams v. Taylor*, 529 U.S. 420 (2000), *Parker v. Gladden*, 385 U.S. 363 (1966) and *Remmer v. United States*, 347 U.S. 227 (1954).

*Remmer* is inapposite because its presumption of prejudice applies only when jurors engage in communications with non-jury members. *See Remmer*, 347 U.S. at 229-30; *see also Whitehead v. Cowan*, 263 F.3d 708, 722 (7th Cir. 2001) (*Remmer* hearing is required only when third-parties contact jurors). Similarly, *Parker* is inapplicable because it involved outside influences that biased the jury. *Parker* found a constitutional violation because a bailiff stated to jurors that defendant was a "wicked fellow," and he was guilty. 385 U.S. at 365. *Williams* involved a clear instance of jury bias. *Williams* required an evidentiary hearing because a juror was previously married to a prosecution witness, and the juror was a former client of defense counsel; the juror failed to disclose those relationships during *voir dire*. 529 U.S. at 441-43.

Smith expressed her inability to sleep to other jurors. There was no reasonable probability other jurors were tainted by Smith's unarticulated fears or apprehensions. *See Whitehead*, 263 F.3d at 722 (an evidentiary hearing unnecessary when jurors complained about newspaper publication of their names and addresses). Accordingly, Aleman fails to establish clearly established federal law required the trial judge to conduct a *voir dire* of the entire jury.

## IV.     Jury Security Measures (Claim II)

Aleman asserts his right to a fair and impartial jury was violated because the jury was subjected to heightened security. Specifically, Aleman complains: (1) sheriffs escorted the jury

under heavy guard; (2) sheriff cars blocked the streets in front of the courtroom when jurors left; (3) the stairwell next to the courtroom was sealed off with police tape; and (4) "all activity in the courthouse came to a standstill when" Lowe and Almeida were escorted to the courthouse. The Illinois appellate court determined the record did not support the assertion that security measures were imposed, except for placement of metal detectors outside the courtroom. The court held security measures were warranted due to the high profile nature of the case, and the record was devoid of evidence the jury was improperly influenced by security measures. Tr., Vol. I, Ex. E, at p. 8.

A federal court has a limited role in determining the extent of measures permitted in furtherance of a state's essential interest in courtroom security. *Hellum v. United States Penitentiary-Leavenworth*, 28 F.3d 903, 907 (8th Cir. 1994). Further, a trial judge has wide discretion in determining necessary security measures in the courtroom. *United States v. Brooks*, 125 F.3d 484, 502 (7th Cir. 1997). The record does not support Aleman's characterization of security measures, except for the presence of metal detectors. The use of metal detectors outside a courtroom does not inflict severe prejudice resulting in the denial of a constitutionally fair trial. *See Hellum*, 28 F.3d at 906 (upholding a state court's use of security measures, including handcuffs, leg irons, and armed guards in the courtroom). Nor is the escort of the jury by deputy sheriffs prejudicial. *See e.g. Holbrook v. Flynn*, 475 U.S. 560, 569 (1986) (presence of four uniformed state troopers in the courtroom did not deny defendant a fair trial). Aleman fails to advance evidence the jury was influenced by security measures. *See Whitehead*, 263 F.3d at 722 (hearing is necessary only when defendant presents more than speculation about jury impartiality). Aleman's *habeas* claim challenging the trial judge's imposition of security measures lacks merit.

## V.     Jury Selection (Claim III)

Aleman argues he was denied a fair trial because the trial judge: (1) allowed jury selection to proceed until 9:30 p.m. without a dinner break; (2) refused to allow further *voir dire* of prospective juror Pauline Ghers; and (3) restricted defense counsel's *voir dire* of some jurors. The Illinois appellate court determined the trial judge conducted *voir dire* until 9:30 p.m. to maintain the court's "one day/one jury" policy. *Aleman*, 313 Ill. App. 3d at 60, 729 N.E.2d at 28. The trial judge informed the jury the final decision to continue *voir dire* without a dinner break was the court's and not the parties'. *Id.;* Tr., Vol VI, at p. B-472. Aleman's claim is frivolous. The questioning of potential jurors without a dinner break until late evening is not an unreasonable application of any clearly established federal law.

Similarly, Aleman's contention the trial judge restricted his *voir dire* of Gehrs lacks merit. Gehrs did not serve on Aleman's jury. A criminal defendant does not have the right to a particular juror. *United States v. Polichemi,* 201 F.3d 858, 865 (7th Cir. 2000). Aleman asserts the trial judge erred by failing to remove Gehrs for cause. Aleman must focus his *habeas* claim on the jurors who served, not prospective jurors who were removed by peremptory strikes. *Ross v. Oklahoma*, 487 U.S. 81, 86 (1988). If the jurors who served were impartial, the loss of a peremptory challenge is not a violation of the constitutional right to an impartial jury. *Id.* at 88. Aleman's *habeas* claim involving Ghers fails.

Finally, Aleman argues the trial judge restricted his *voir dire* of some jurors. Aleman presents conclusory arguments and fails to identify *voir dire* questions the trial judge restricted. Aleman fails to cite to the record. Indeed, Aleman's petition only identifies the trial judge's restriction of his questions about a juror's newspaper reading habits. The Illinois appellate court

determined the trial judge inquired whether each venire member "had actual knowledge of the defendant" or "had heard or read anything about defendant or his case." *Aleman*, 313 Ill. App. 3d at 60, 729 N.E.2d at 29. If a juror answered affirmatively, the trial judge then inquired further into the "source and specific nature of the information and its effect." *Id.* The trial judge's refusal to question the venire about newspaper subscriptions was not constitutional error nor did it violate clearly established federal law.[2] *See Mu'Min v. Virginia*, 500 U.S. 415 (1991) (trial judge's refusal to question prospective jurors about specific contents of available news reports did not violate right to an impartial jury).

## VI.    Trial Judge's Evidentiary Rulings (Claims IV-V)

"[S]tate court evidentiary rulings, because they are a matter of state law, will rarely serve as a proper basis for granting a writ of habeas corpus." *Haas v. Abrahamson*, 910 F.2d 384, 389 (7th Cir. 1990); *see Gonzalez v. DeTella*, 127 F.3d 619, 621 (7th Cir. 1997). *Habeas* relief is appropriate only if the trial court's evidentiary ruling denied the defendant the right to a fundamentally fair trial. *Abrams v. Barnett*, 121 F.3d 1036, 1042 (7th Cir. 1997). A defendant does not receive a fundamentally fair trial when the challenged rulings "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438, n .6 (1983).

---

[2] In his petition, Aleman argues ineffective assistance of counsel under Claim III. The state responds that claim was procedurally defaulted. In his reply brief, Aleman withdraws the ineffective assistance of counsel claim.

## A.    Admission of Prior Crimes Evidence (Claim IV)

Aleman presents conclusory arguments about admission of prior crimes without citation to the record or case authority. Aleman lists the following purported constitutional errors: (1) admission of Judge Wilson's bribery; (2) Cooley's testimony "about First Ward politics, illegal gambling, fixed court cases, John D'Arco, Pat Marcy, the 'outfit,' Marco D'Amico, threats to judges, a second bribe to a witness in Aleman's original trial, and so on;" (3) Aleman's commission of a home invasion with Almeida; and (4) Judge Wilson's suicide. The court is not required to scour the 23-volume record searching for constitutional errors in Aleman's trial. The court will address Aleman's claim to the extent he identifies coherent and identifiable *habeas* claims in his petition.

Aleman argues the trial judge improperly admitted evidence Judge Wilson was bribed. The Illinois appellate court held the admission of Aleman's bribery of Judge Wilson was permitted to demonstrate Aleman's consciousness of guilt; the 25-year delay in Aleman's trial; and Aleman's initial acquittal. *Aleman*, 313 Ill. App. 3d at 65, 729 N.E.2d at 33. Under Illinois law, evidence of other crimes is admissible to demonstrate a defendant's consciousness of guilt. *People v. Hawkins*, 326 Ill. App. 3d 992, 997, 762 N.E.2d 46, 50 (1st Dist. 2002). As a matter of state law, the Illinois appellate court held the trial judge did not abuse his discretion by admitting evidence of other crimes. *Aleman*, 313 Ill. App. 3d at 65, 729 N.E.2d at 65. Further, the Illinois appellate court noted the trial judge excluded all references to organized crime, but allowed references to the First Ward political organization because it was involved in the bribery conspiracy. *Id.* at 66. Aleman asserts the trial judge should not have admitted evidence of a home invasion that Aleman and Almeida jointly committed. The Illinois appellate court determined the admission of that evidence was proper as rebuttal evidence. Aleman's theory of defense was that Petrocelli and Almeida committed Logan's

murder. The Illinois appellate court observed:

> [D]efendant suggested to the jury that Petrocelli must have committed Logan's murder; he then bolstered this theory by portraying Petrocelli and Almeida as criminal cohorts. Responding, the State adduced evidence that defendant and Almeida also were cohorts, thereby rebutting the inference that only Almeida and Petrocelli, not Almeida and defendant committed Logan's murder. Accordingly, no error occurred.

Tr., Vol. I, Ex. E. at p. 10.

Finally, Aleman contests the admission of Judge Wilson's suicide. The trial judge initially ruled this evidence was inadmissible. During Aleman's cross-examination of Lowe, Lowe made a vague, unexpected reference to a judge who committed suicide. Judge Wilson was not mentioned by name. *Id.* at 12. Aleman failed to object. The Illinois appellate court found no prejudicial error.

Aleman's claims fail to demonstrate he was subjected to a fundamentally unfair trial. The trial judge's evidentiary rulings are matters of state law; the rulings were affirmed. *See e.g. Walker v. Carter*, No. 97 C 8345, 2000 WL 263702, at *6 (N.D. Ill. Feb. 28, 2000) (refusing to disturb state court rulings on admissibility of hearsay evidence on *habeas* review). This court's review is limited to determining whether Aleman was afforded a fundamentally unfair trial that amounts to a due process violation. Aleman's arguments contest the wisdom of the state court's evidentiary rulings. Aleman cloaks the state court rulings as federal due process violations. However, on *habeas* review, Aleman must establish prejudice that gives rise to the likelihood that an innocent person was convicted. *See Howard v. O'Sullivan*, 185 F.3d 721, 723-24 (7th Cir. 1999); *see also Fleming v. DeTella*, No. 97 C 2997, 2001 WL 127644, at *5 (N.D. Ill. Feb. 14, 2001) (admission of other crimes evidence, in accordance with Illinois law, was not grounds for *habeas* relief). Aleman makes no claim he is innocent of the murder charge, nor does he point to record evidence suggesting that conclusion. The trial judge's admission of prior crimes evidence, in accordance with Illinois law,

did not result in a fundamentally unfair trial. On *habeas* review, the court does not balance the probative value of the evidence against unfair prejudice; that analysis is deferred to the state court. *Anderson v. Sternes*, 243 F.3d 1049, 1055 (7th Cir. 2001). Further, Lowe's vague, passing reference to a judge who committed suicide is immaterial to Aleman's conviction for Logan's murder. Aleman does not advance relevant Supreme Court precedent that demonstrates he was subjected to a fundamentally unfair trial. Consequently, Aleman fails to establish the state court unreasonably applied clearly established federal law.

**B.  Admission of Judge Wilson's Factual Findings (Claim V)**

Aleman sought to introduce Judge Wilson's factual findings from the 1977 trial. The trial judge agreed to admit Judge Wilson's findings, but noted evidence about Judge Wilson's suicide would be admissible to rebut Aleman's claim that Judge Wilson was not bribed. The trial judge determined Aleman would open the door to Judge Wilson's suicide if he argued Judge Wilson was not bribed and his acquittal at the first trial was legitimate. Tr., Vol. I., Ex. E at p. 17. As a result, Aleman refrained from introducing Judge Wilson's factual findings. The Illinois appellate court found no error in the trial judge's ruling. Aleman fails to establish the state court's decision violated clearly established federal law. Aleman advances *Rock v. Arkansas*, 483 U.S. 44 (1987) and *Washington v. Texas*, 388 U.S. 14 (1967). *Rock* and *Washington* do not concern analogous facts, and refer generally to a defendant's right to present a defense. However, "the defendant's right to present evidence is not absolute, and the exclusion of even relevant evidence does not automatically create a Due Process violation." *Morgan v. Krenke*, 232 F.3d 562, 569 (7th Cir. 2000). Aleman now argues the trial judge's ruling was unwise. The Illinois appellate court affirmed the trial judge's ruling; it is not a federal court's role to review state evidentiary decisions. *Id.*

## VII.    Exclusion of Dr. Herbert MacDonnell's Expert Testimony (Claim VI)

Aleman asserts the trial court erred when it excluded a portion of Dr. Herbert MacDonnell's testimony.  Dr. MacDonnell was Aleman's designated expert, a criminoligist and expert in crime scene reconstruction.  Dr. MacDonnell testified to the angle and tragectory of the shooting, and that Logan's neck wound was not caused by a shotgun but a .45 caliber handgun.  Dr. MacDonnell was also offered to dispute the state expert's characterization of Logan's second shotgun wound.  Dr. MacDonnell was not permitted to opine that an individual hit by a shotgun bullet would not "fly backwards."  Tr., Vol. I, Ex. E at p. 15.  The trial judge ruled Aleman failed to disclose the last opinion to the state until Dr. MacDonnell was called as an expert witness at trial. Tr., Vol. XI, at p. F-26.  The trial judge recognized the state would be unduly prejudiced by the admission of the undisclosed opinion.

Aleman contends he was denied the right to call witnesses in his defense and due process of law under the Sixth and Fourteenth Amendments.  The Illinois appellate court affirmed the limited exclusion of Dr. MacDonnell's testimony because Aleman failed to comply with Illinois discovery rules on expert testimony disclosure. *See* Tr., Vol. I, Ex. E., at p. 15.  Aleman argues he did not violate Illinois discovery rules.  The Illinois appellate court rejected that argument.  Aleman's claim based on state law grounds is improper in a federal *habeas* petition. *See e.g. Pertz v. Carter*, No. 97 C 2066, 1997 WL 422273, at *5 (N.D. Ill. Jan. 29, 1998).  Further, the trial court's exclusion of the undisclosed portion of Dr. MacDonald's testimony did not result in a fundamentally unfair trial.  The exclusion of evidence does not violate the due process clause unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 201-202

(1977). That standard has not been met.

## VIII. Prosecutorial Misconduct (Claim VII)

To warrant *habeas* relief, a prosecutor's actions must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainright*, 477 U.S. 168, 181 (1986). When assessing whether a prosecutor's statement deprived a defendant of a fair trial, the court must examine five factors: (1) the nature and seriousness of the prosecutorial misconduct; (2) whether the prosecutor's statement was invited by defense counsel's conduct; (3) whether the trial court's instructions to the jury were adequate; (4) whether the defense was able to counter the improper arguments through rebuttal; and (5) the weight of the evidence against the defendant. *United States v. Butler*, 71 F.3d 243, 254 (7th Cir. 1995).

The Fifth Amendment to the Constitution guarantees a criminal defendant the right to refuse to testify in his defense. *Freeman v. Lane*, 962 F.2d 1252, 1260-61 (7th Cir. 1992). As a corollary to that right, the Fifth Amendment prohibits a prosecutor from referring to a defendant's refusal to testify. *Griffin v. California*, 380 U.S. 609, 614, (1965). Thus, a prosecutor cannot invite the jury to infer guilt from a defendant's silence. *Id.* at 615. Nevertheless, during closing argument, the prosecutor commented: "[Defendant] is the only one in this room who didn't come on this witness stand and talk about accepting responsibility. And again, the defendant does not have to testify. But those other witnesses told you about their accepting of their responsibility." Tr., Vol. XIV, at p. H-77. In addition, the prosecutor theorized about the possibility of a third shot, but stated only defendant "knows." *Id.* at p. H-47. The Illinois appellate court determined that "[t]aken as a whole, those comments reflect a calculated attempt to draw attention to defendant's invocation of his right of refusal to testify. This line of argument had the greatest potential for prejudicing the defense and

17

for denying defendant a fair trial." *Aleman*, 313 Ill. App. 3d at 67, 729 N.E.2d at 34. The Illinois appellate court also found the prosecutor improperly drew a connection between Aleman and an organized crime syndicate by calling Aleman a "hitman," in circumvention of the trial judge's order. *Id.* Finally, the Illinois appellate court held the prosecutor exceeded the bounds of proper argument by his negative portrayal of defense counsel: "But what [defendant's] attorneys have done is not unlike what was done in 1977 when it went to trial. Different form, different style. But they don't want you to follow the law." *Id.*

The Illinois appellate court noted the trial judge sustained defense counsel's objections to the prosecutor's improper statements, and provided numerous curative instructions. During *voir dire*, the court instructed the venire Aleman was innocent unless the state proved his guilt beyond a reasonable doubt, and that he need not testify. After the jury was selected and sworn, the court again advised the jurors of Aleman's right not to testify. In closing argument, the prosecutor noted Aleman's right not to testify. Finally, the court instructed the jury of Aleman's presumption of innocence:

> The defendant is presumed to be innocent of the charge against him, and this presumption remains with him throughout every stage of the trial and during your deliberations on the verdict, and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that he is guilty. The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the state throughout the case. The defendant is not required to prove his innocence.

*Aleman*, 313 Ill. App. 3d 68, 729 N.E.2d at 34; Tr., Vol. XIV, at p. H-177. The trial court instructed the jury: "The fact that the defendant did not testify must not be considered by you in any way in arriving at your verdict." *Id.* at H-178. The Illinois appellate court held the curative effect of these repeated instructions prevented any prejudice to Aleman and he was not denied a fair trial.

To warrant *habeas* relief, Aleman must establish the Illinois appellate court unreasonably applied clearly established federal law. The Illinois appellate court correctly balanced competing factors to determine if Aleman suffered prejudice. *See Aliwoli v. Carter*, 225 F.3d 826 (7th Cir. 2000) (trial judge's instructions can prevent undue prejudice to defendant). The prosecutor's comments during closing argument were clearly improper. However, the Illinois appellate court determined the curative effect of the trial judge's instructions adequately protected his right to a fair trial in view of the manifest weight of the evidence. A federal court's role in *habeas* review is limited. *See Sanchez v. Gilmore*, 189 F.3d 619, 623 (7th Cir. 1999) ("the fact that we may think certain things could have been handled better by the state trial judge or by the state prosecuting attorney or by a state reviewing court means very little"). A state court's decision must stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748-49 (7th Cir. 1997). The Illinois appellate court's determination the trial judge's curative instructions and strength of the evidence against Aleman prevented any prejudice is a reasonable application of federal law. *See United States v. Andreas*, 216 F.3d 645, 673-76 (7th Cir. 2000) (curative instruction and strength of evidence may result in harmless error of prosecutor's misstatements about defendant's refusal to testify).

The state presented the testimony of Lowe and Almeida, both of whom clearly implicated Aleman in Logan's murder. *See Whitehead*, 263 F.3d at 729 (manifest weight of the evidence prevented *habeas* relief where prosecutor made improper comments); *Rodriguez v. Peters*, 63 F.3d 564, 562 (7th Cir. 1995) (overwhelming evidence prevented prejudice to defendant by prosecutorial misconduct). Alemeida detailed Aleman's participation in the murder; Lowe witnessed the murder and identified Aleman as the shooter. Thus, it was reasonable for the Illinois appellate court to

conclude the prosecutor's remark about Aleman not taking responsibility did not tip the scales in favor of a conviction. *See Bell v. Cone*, _ U.S. _ , 2002 WL 1050365, at *6 (S.Ct. May 28, 2002) (state court decision must be objectively unreasonable to grant habeas relief under § 2254(d)(1)); *Hough v. Anderson*, 272 F.3d 878, 890 (7th Cir. 2001) (an incorrect application of federal law is not necessarily unreasonable). Accordingly, Claim VII fails.

## IX. Judicial Bias (Claim VIII)

Aleman argues he was deprived of due process because one of the prosecutors, Assistant State's Attorney Patrick Quinn, is currently a member of the Illinois appellate court. Although Justice Quinn recused himself from the panel that heard Aleman's direct appeal, Aleman contends Justice Quinn participated on a panel before his case was called at oral argument. When Aleman argued his case, one justice was unable to participate. Two justices heard the appeal, but the appellate court's decision was issued by a three-judge panel. *See Aleman*, 313 Ill. App. 3d at 53, 729 N.E.2d at 24. In short, Aleman's argument amounts to mere speculation about a conspiracy among the justices to permit Justice Quinn to influence its decision. *See Del Vecchio v. Dep't. of Corr.*, 31 F.3d 1363, 1373 (7th Cir. 1994) (speculation cannot support claim of judicial bias). Further, Aleman cannot demonstrate actual bias or even an appearance of bias because Justice Quinn recused himself from consideration of Aleman's direct appeal. The Illinois appellate court summarily denied Aleman's bias claim in his petition for rehearing. Claim VIII fails.

## X. Evidentiary Hearing Requests in § 2254 petition

Finally, Aleman requests an evidentiary hearing to develop the factual record for every claim asserted in his *habeas* petition. Aleman fails to discuss § 2254(e)'s requirements. This court cannot grant an evidentiary hearing unless Aleman demonstrates his claim relies on "(i) a new rule of

constitutional law . . . that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2). Aleman does not advance a new rule of constitutional law previously unavailable in his § 2254 petition. Further, a "federal court's ability to hold an evidentiary hearing in order to supplement the record when the petitioner has failed to develop the factual basis of a claim in State court proceedings is severely circumscribed." *Bouyko v. A.C. Parke*, 259 F.3d 781, 790 (7th Cir. 2001). A federal court may hold an evidentiary hearing if the petitioner points to facts sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would find him guilty of the underlying offense. 28 U.S.C. § 2254(e)(2)(B). Aleman fails to advance facts that, if proven, could rebut the state court's factual findings by clear and convincing evidence. *See Mediola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000). Accordingly, an evidentiary hearing is unwarranted.

## CONCLUSION

The petition for a writ of *habeas corpus* under 28 U.S.C. § 2254 is denied.

May 30, 2002

ENTER:

Suzanne B. Conlon
United States District Judge